IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

3:23-cv-307

| | |
|---|---|
| SARAH HONEYCUTT; and BLAKE HONEYCUTT, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>THE STANDARD FIRE INSURANCE COMPANY; STANDARD FIRE INSURANCE COMPANY; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY; THE TRAVELERS CASUALTY COMPANY; TRAVELERS CASUALTY & SURETY COMPANY; TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA; TRAVELERS INDEMNITY COMPANY; TRAVELERS PERSONAL INSURANCE COMPANY; TRAVELERS PERSONAL SECURITY INSURANCE COMPANY; and THE TRAVELER'S COMPANIES, INC. )<br>)<br>Defendants. ) | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

**NOW COME** Plaintiffs, by and through undersigned counsel, to complain of the Defendants by alleging and saying as follows:

## PARTIES

1. Plaintiffs are citizens and residents of Mecklenburg County, North Carolina.

2. Defendants THE STANDARD FIRE INSURANCE COMPANY and STANDARD FIRE INSURANCE COMPANY are, upon information and belief, a single corporation, domiciled in the State of Connecticut; however, in some places, this corporation is

registered as "STANDARD FIRE INSURANCE COMPANY," while in others, it is registered as "THE STANDARD FIRE INSURANCE COMPANY." For example, it is registered only as "STANDARD FIRE INSURANCE COMPANY" with the National Association of Insurance Commissioners and with the North Carolina Insurance Commissioner in their consumer and service databases, while it lists itself as "THE STANDARD FIRE INSURANCE COMPANY" in its insurance policies and in certain incorporation documents. At all times relevant hereto, Defendants THE STANDARD FIRE INSURANCE COMPANY and STANDARD FIRE INSURANCE COMPANY were transacting substantial business in the State of North Carolina.

3. All Defendants are a group of affiliated insurance companies, sharing employees and contractors, that collectively issue insurance policies and adjust claims in the State of North Carolina. All Defendants are corporations, domiciled in the State of Connecticut. At all times relevant hereto, they were transacting substantial business in the State of North Carolina.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

5. The Defendants are subject to personal jurisdiction in this District.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, or omissions giving rise to the underlying claim under the policy of insurance at issue occurred there.

## FACTUAL ALLEGATIONS

7. Plaintiffs are the owners of real property located at 17431 Summer Place Drive, Cornelius, North Carolina (hereinafter, the "Residence"). The Residence is a 2 story, wood-

framed, single-family structure, constructed in 1996. The exterior walls were constructed with painted cedar shake with aluminum clad insulated glass windows. The roof was constructed with three-tab asphalt shingles with closed valleys and drainage provided by aluminum gutters and downspouts. Secondary accent roofs at the bay windows at the front of the house and above the rear bedroom were constructed with standing seam copper roofs. The siding and roofs are original to the construction of the residence.

8. The Residence has been insured by the Defendants at all times relevant to this Complaint under a Homeowners Insurance Policy (hereinafter, the "Policy"), which was renewed annually to provide coverage from February 2000 to February 2021 (Policy No. 606020248-657-1), February 2021 to February 2022 (Policy No. 606020248-657-1), February 2022 to February 2023 (Policy No. 610624627-657-1), and February 2023 to February 2024 (Policy No. 610624627-657-1). The Policy provided coverage for all damages caused by wind or hail since its inception to present date.

9. On January 6, 2022, Plaintiffs made a claim to Defendants under their Policy for extensive hail and wind damage that had been discovered to their roofs, siding, flashing, vents, and metal apertures, gutters and downspouts, and other building components, which was causing water intrusion into the structure. After investigation, the Defendants determined that the damage that was subject to this insurance claim was caused by a wind and hail-storm event on May 24, 2020 (hereinafter, the "Storm"). The Defendants assigned May 24, 2020 as the Date of Loss, and the claim was assigned claim number ISL7847 (hereinafter, the "Claim").

10. On January 27, 2022, Defendants prepared a replacement cost estimate of $24,734.09, and made actual cash value payments totaling $19,742.86. Plaintiffs contacted Defendants to notify them that based upon their consultation with contractors that they had been

drastically undercompensated; however, Defendants did not take further action to properly pay the Claim. Defendants performed an inadequate and incomplete investigation of the extent of damages.

11. Therefore, on October 21, 2022, after failing to receive payment, Plaintiffs provided to Defendants a Sworn Statement In Proof of Loss, along with an attached contractors estimate, detailing and attesting to the amount of loss as a result of the Storm, in the then total amount of $141,519.19. Said Proof of Loss is attached hereto as <u>Exhibit A.</u> Defendants failed to provide a substantive response to this Proof of Loss for approximately five (5) months.

12. Then, further showing the incomplete nature of their original investigation of damages, in February of 2023, Defendants prepared a new replacement cost estimate, which this time totaled $47,536.38, and made actual cash value payments to raise the total amount received by Plaintiffs to $32,770.33. These payments still drastically failed to compensate Plaintiffs for the damage that was attributed to the Storm, namely in failing to fully pay for exterior damages and completely failing to pay for any of the interior damages from the associated water intrusion.

13. As a result, on February 13, 2023, Plaintiffs invoked the Appraisal Provision of the Policy to resolve the dispute. On February 20, 2023, Defendants wrote back to Plaintiffs that they would agree for Appraisal of the exterior building components, but that they were refusing to have Appraisal determine all damages or damages from the associated water intrusion. This denied Plaintiffs a Policy benefit, and it misrepresented the terms of Appraisal. Nevertheless, Plaintiffs and Defendants proceeded with Appraisal. However, to date, despite knowing of the looming contractual statute of limitations, on May 24, 2023, the Appraisal has not concluded, and Defendants have stopped returning Plaintiffs' calls and little has been heard from Defendants designated Appraiser. Specifically, on the week of May 15, 2023, Plaintiffs reached out to their

assigned desk adjuster requesting a tolling agreement for Appraisal to be completed, and they have received no response. Therefore, Defendants are running the clock out on the Claim, and Plaintiffs are hereby being forced and compelled to file this litigation to preserve their legal claims.

14. Attached hereto as <u>Exhibit B</u> is an updated Xactimate estimate with more current labor and material costs. The same reflects that the total amount due and owing by Defendants is $144,019.19, less the previously referenced payments. Defendants have failed to provide valid and justifiable reasons for their refusal to pay.

15. Due to Defendants' actions and inactions, Plaintiffs have been unable to return the Residence to its pre-loss condition, and Defendants have compelled Plaintiffs to institute this litigation to recover amounts due under the Policy.

16. Plaintiffs repeatedly provided all information and documentation relevant to Plaintiffs' contention that Defendants had drastically undervalued the Claim. Such information was not provided reasonable consideration by Defendants.

## FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

17. Plaintiffs reallege and incorporate the preceding allegations as if set forth verbatim herein.

18. The Policy is and was a valid and enforceable contract between Plaintiffs and Defendants.

19. Defendants breached this contract by failing to provide the benefits, coverages and payments due thereunder to Plaintiffs.

20. As a direct and proximate result of Defendants' breach of contract, Plaintiffs have suffered monetary damages in an amount equal to the payments due under the Policy, as well as consequential damages.

## SECOND CLAIM FOR RELIEF
### Breach of the Covenant of Good Faith and Fair Dealing

21. Plaintiffs reallege and incorporate the preceding allegations as if fully set forth herein.

22. The Defendants' conduct alleged herein was in bad faith and in violation of the covenant of good faith and fair dealing implied by law into the Policy.

23. Specifically, the Defendants (1) refused to pay the full amount of the loss after recognition of a valid claim, (2) engaged in bad faith through wrongful purpose or intent to save money under its coverages, and (3) engaged in aggravating conduct, through evidencing a reckless and wanton disregard of Plaintiffs' rights under the Policy as detailed herein.

24. As a proximate result of the Defendants' bad faith breach of the contract, Plaintiffs are entitled to recover punitive damages from the Defendants for the above-described conduct, which was willful and wanton, in the maximum amount permitted by law.

## THIRD CLAIM FOR RELIEF
### Unfair & Deceptive Trade Practices

25. Plaintiffs reallege and incorporate the preceding allegations as if fully set forth herein.

26. The conduct of Defendants constitutes Unfair & Deceptive Trade Practices in violation of Chapter 75 of the North Carolina General Statutes.

27. Conduct that would be found in violation of N.C.G.S. § 58-63-15(11) is a violation of N.C.G.S. § 75-1.1 and is an Unfair & Deceptive Trade Practice. The conduct of all Defendants violates one or more of the subparts of N.C.G.S. § 58-63-15(11), including, but not limited to:

   a. Misrepresenting pertinent facts or insurance policy provisions relating to the coverages at issue;

b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

d. Refusing to pay claims without conducting a reasonable investigation;

e. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

f. Compelling [the] insured to institute litigation to recover amounts due under an insurance policy;

g. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of or refusal to pay a claim;

h. Failing to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed; and

i. Other particulars as will be adduced through further investigation, discovery, or at trial.

28. Moreover, with Defendants' actual and/or constructive knowledge of Plaintiffs' damages, Defendants unfairly and unlawfully failed to promptly investigate, adjust, and pay the Claims in violation of North Carolina law and Chapter 75 of the North Carolina General Statutes. The factually specific conduct in violation of Chapter 75 of the North Carolina General Statutes, in part, is outlined above.

29. The conduct of the Defendants directly violates N.C.G.S. § 75-1.1 in that their acts were unfair, unscrupulous, immoral, deceptive, oppressive, and substantially injurious to

consumers, including Plaintiff, and were an inequitable assertion of their power and position over Plaintiff under the circumstances.

30. Defendants' unfair and deceptive trade acts or practices were in or affecting commerce.

31. As a proximate result of Defendants' unfair and deceptive trade acts and practices, Plaintiffs have suffered damages in an amount equal to the benefits currently due under the Policy as well as additional damages to be proven at trial.

32. Pursuant to N.C.G.S. § 75-16, Plaintiffs are entitled to treble their damages.

33. Pursuant to N.C.G.S. § 75-16.1, Plaintiffs are entitled to an award of reasonable attorney's fees.

**WHEREFORE**, Plaintiffs pray that the Court enter Judgment as follows:

1. That Plaintiffs have and recover of Defendants, jointly and severally, a sum equal to the amount of benefits due under the Policy, as well as consequential, incidental, compensatory, and other contractual damages to be proven at trial;

2. That Plaintiffs be awarded treble their damages as provided by N.C.G.S. §§ 75-1.1 and 75-16, or at Plaintiffs' election, punitive damages;

3. That the Court tax prejudgment interest on the award and post judgment interest on the entire judgment as permitted by law;

4. That the Court tax the costs of this action, including Plaintiffs' attorney's fees as provided by the common law and the North Carolina General Statutes, including but not limited to Chapter 75 and 58 thereof, against Defendants;

5. That all issues of fact be tried by a jury; and

6. That Plaintiffs have such other and further relief as the Court may deem just and proper.

This the 22th day of May, 2023.

**HOWARD, STALLINGS, FROM,
ATKINS, ANGELL & DAVIS, P.A.**

By: /s/ Robert H. Jessup
    Robert H. Jessup (State Bar No. 42945)
    Post Office Box 12347
    Raleigh, North Carolina 27607
    Telephone: (919) 821-7700
    rjessup@hsfh.com
    *Attorney for Plaintiff*